UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| TRANSAMERICA LIFE INSURANCE CO., *Plaintiff,* v. VINCENT R. RINALDI, JR., *et al.,* *Defendants.* | Civil Action No. 15-3018 (JMV) (JBC) OPINION |
| VINCENT R. RINALDI, JR., *et al.,* *Third-Party Plaintiffs,* v. FERDINAND MANCINI and LIFESERV PARTNERS, *Third-Party Defendants.* | |

**John Michael Vazquez, U.S.D.J.**

This case concerns the distribution of life insurance policy proceeds. Plaintiff Transamerica Life Insurance Company ("Transamerica") instituted this interpleader action regarding the distribution of Vincent R. Rinaldi, Sr.'s ("Vincent Sr.") death benefit policy as to Vincent Sr.'s sons Vincent Rinaldi, Jr. ("Vincent Jr.") and Peter Rinaldi ("Peter"). Currently pending before the Court are three motions for summary judgment filed by Vincent Jr., D.E. 68;[1]

---

[1] Additionally, Vincent Jr. filed a *Daubert* motion as to Peter's expert, Richard G. Pfluger, with his motion for summary judgment. *See* D.E. 68-4 at 14-17. The Court denies the *Daubert* motion

Peter, D.E. 70; and Third-Party Defendants LifeServ Partners and Ferdinand Mancini (collectively "Mancini"), D.E. 69.

The Court reviewed the parties' submissions[2] and decided the motion without oral argument pursuant to Fed. R. Civ. P. 78(b) and L. Civ. R. 78.1(b). For the reasons set forth below, Vincent Jr.'s motion for summary judgment is **DENIED**, Peter's motion for summary judgment is **GRANTED**, and Mancini's motion for summary judgment as to the third-party claim is **DENIED**.

### I. Procedural History & Factual Background[3]

On November 12, 2007, Transamerica issued an Adjustable Life Insurance Policy (the "Policy") in the amount of $1,000,000, insuring the life of Vincent Sr. Vincent Jr. SOMF ¶ 2, Ex. A. When issued, the Policy named Vincent Sr.'s sons, Vincent Jr. and Peter, as the beneficiaries,

---

as moot in light of the Court's other rulings.

[2] The following briefs were submitted in connection with this motion: Vincent Jr.'s memorandum in support of its motion, D.E. 68-4, hereinafter "Vincent Jr. Br."; Peter's Brief in Opposition, D.E. 74, hereinafter "Peter Opp."; Mancini's memorandum in support of its motion, D.E. 69-1, hereinafter "Mancini Br."; Vincent Jr.'s Brief in Opposition to Mancini's motion for third-party summary judgment, D.E. 73, hereinafter "Vincent Jr. Opp. to Mancini"; Mancini's reply memorandum, D.E. 76, hereinafter "Mancini Reply"; Peter's memorandum in support of its motion, D.E. 70-2, hereinafter "Peter Br."; Vincent Jr.'s Brief in Opposition to Peter's motion for partial summary judgment, D.E. 72, hereinafter "Vincent Jr. Opp. to Peter"; and Peter's reply memorandum, D.E. 75, hereinafter "Peter Reply."

[3] The facts are taken from the parties' respective statements of material facts as well as the documents attached: Vincent Jr.'s Rule 56.1 Statement of Material Facts not in Dispute, D.E. 68-3, hereinafter "Vincent Jr. SOMF"; Peter's Responsive and Supplemental Statement of Material Facts not in Dispute, D.E. 74, hereinafter "Peter Resp. SOMF"; Mancini's Rule 56.1 Statement of Material Facts not in Dispute, D.E. 69-2, hereinafter "Mancini SOMF"; Vincent Jr.'s Responsive and Supplemental Statement of Material Facts not in Dispute, D.E. 73, hereinafter "Vincent Jr. Resp. SOMF to Mancini"; Peter's Rule 56.1 Statement of Material Facts not in Dispute, D.E. 70-3, hereinafter "Peter SOMF"; and Vincent Jr.'s Responsive and Supplemental Statement of Material Facts not in Dispute, D.E. 72, hereinafter "Vincent Jr. Resp. SOMF to Peter."

with each being entitled to 50% on Vincent Sr.'s death. *Id.* ¶ 5.

According to Vincent Jr., Vincent Sr. then changed his mind regarding his estate planning and intended beneficiaries. *Id.* ¶ 7. In July 2010, Vincent Sr. executed a last will and testament, leaving his entire estate to Vincent Jr. *Id.* at ¶ 15. Article II of the will expressly disinherited Vincent Sr.'s other children, including Peter, stating:

> I specifically acknowledge that I have three (3) additional children; to wit, PETER RINALDI, DENISE DEMARZO and KAREN HORAN. It is my absolute intention to leave none of my assets to any of these children. I have made this decision for personal reasons. My Executor is instructed to ensure that none of these children noted in this Paragraph receives any benefit whatsoever from my Estate upon my death or thereafter.

*Id.* at ¶ 16. It does not appear, however, that Vincent Sr. made any changes to the Policy in 2010.

In 2013, Vincent Sr. met with Gary Garland, an elder law attorney, to review and revise Vincent Sr.'s estate planning documents. *Id.* at ¶ 17.[4] As a result, on April 30, 2013, Vincent Sr. executed The Vincent R. Rinaldi, Sr. Living Trust (the "Living Trust"); another last will and testament; a qualified personal residence trust; and an irrevocable life insurance trust (the "ILIT"). *Id.* at ¶¶ 19, 26, 32, 34. Vincent Sr. also executed powers of attorney in favor of Vincent Jr. *Id.* at ¶¶ 30-31. The Living Trust provided in part as follows:

> I am specifically disinheriting Denise DeMarzo, Peter Rinaldi and Karen Horan and their descendants. Therefore, for the purposes of this trust, Denise DeMarzo, Peter Rinaldi and Karen Horan and their descendants will be considered to have predeceased me.

*Id.* at ¶ 21. The Living Trust named Vincent Jr. as the successor trustee and provided that all trust property was to go to Vincent Jr. *Id.* at ¶¶ 22-23.

---

[4] Vincent Jr. further avers that Vincent Sr. informed Garland that he (Vincent Sr.) wanted all of his assets to go to Vincent Jr. *Id.* at ¶ 40.

3

The 2013 will revoked all prior wills, including the 2010 will. *Id.* at ¶ 26. The 2013 will also contained language disinheriting Vincent Sr.'s children other than Vincent Jr. *Id.* at ¶ 27, Ex. F at Art. One. Vincent Sr.'s 2013 will was a "pour over" will, which meant that all of his assets "poured over" to the Living Trust, effectively leaving all of his assets to Vincent Jr. *Id.* at ¶ 28, Ex. F at Section 2.01.

As to the ILIT, Vincent Jr. was appointed trustee, lifetime beneficiary,[5] and sole beneficiary.[6] *Id.* ¶¶ 34-35. The ILIT did not expressly refer to the Policy. Instead, it indicated that Vincent Sr. was transferring the property listed in Schedule A, which in turn stated "Ten Dollars Cash[.]" *Id.*, Ex. J at Section 1.04, Sched. A. Vincent Jr. indicates that the sole purpose of the ILIT was to account for the Policy and that Vincent Sr. had no other life insurance policies. *Id.* at ¶¶ 6, 41. Mancini agrees with this position. Mancini SOMF at ¶ 7. The ILIT indicated that "[a]ll property, including life insurance policies, transferred to [the ILIT] after the date of this agreement must be acceptable to my Trustee." Peter SOMF, Ex. J at Section 1.04.[7]

In a separate letter also dated April 30, 2013, Vincent Sr. advised TransAmerica that he was changing the Policy's broker of record to Mancini. *Id.* at ¶ 39, Ex. K. Mancini is a licensed insurance broker and a principal of LifeServ Partners. Mancini SOMF at ¶ 1. Mancini agreed to become the servicing agent for the Policy so that he could help with changing the beneficiary. *Id.*

---

[5] Two of Vincent Sr.'s granddaughters, as well as a grandson, were also named lifetime beneficiaries. *Id.* Ex. J at Art. 2.

[6] Vincent Jr.'s assertion that he was "sole beneficiary" is not readily apparent to the Court in reviewing the ILIT. However, because no other party raises an issue with this assertion, the Court accepts it as true for purposes of the current motion.

[7] The ILIT contained a provision at Section 10.10 entitled "Insurance Powers," which indicated that the trustee had the authority to "purchase disability, medical, liability, longterm [sic] health care, and other insurance on behalf of and for the benefit of any beneficiary." *Id.* Ex. J at Section 10.10.

at ¶ 7. According to Mancini, Vincent Sr. indicated that he wanted all his assets, including the Policy, to go to Vincent Jr. *Id.* at ¶¶ 3, 6-7.

After the creation of the ILIT, it appears that two actions had to be taken vis-à-vis the Policy. First, the beneficiaries had to be changed. In fact, it appears that the beneficiaries had to be changed regardless of the ILIT if Vincent Sr. was going to eliminate Peter as a beneficiary. Second, the ownership of the Policy had to be changed to the ILIT. Vincent Jr. SOMF at ¶ 46. Mancini was supposed to oversee both according to Vincent Jr. *Id.* On January 23, 2014, TransAmerica received a facsimile of a verification of trust agreement form signed by Vincent Jr., but the form was not dated and not signed by Vincent Sr., the Policy's owner of record. Peter SOMF ¶ 7; Vincent Jr. SOMF ¶ 47, Ex. O. The form appears to only attempt to change the owner of the Policy, not the beneficiaries, to ILIT. Vincent Jr. SOMF Ex. O. Mancini indicates that his office prepared the form for Vincent Jr. Mancini SOMF at ¶¶ 21-22.

On January 29, 2014, TransAmerica wrote to "Vincent Rinaldi" (meaning Vincent Sr.)[8] informing him that the trust verification form was ineffective in changing the Policy because it "was not dated." Peter SOMF ¶ 8; Vincent Jr. SOMF ¶ 48, Ex. P. The letter further indicated that a transfer of ownership form and a beneficiary change form were included, along with a return envelope, and that the forms "should be returned as soon as possible." *Id.* TransAmerica's letter warned that "[n]o changes will be made until we receive the requested information and fully completed forms." *Id.* Mancini was also copied on the January 29, 2014 letter, *id.*, but he claims that he never received it. Mancini SOMF ¶ 24. In fact, Mancini did not see the letter until after Vincent Sr. passed away, *id.*, and TransAmerica confirmed on March 16, 2015 that it had not sent

---

[8] No party has indicated that Vincent Sr. was incompetent or incapacitated when the January 29, 2014 letter was sent. In addition, no party has indicated that Vincent Sr. did not receive the letter.

5

a copy of the letter to Mancini. Mancini SOMF, Ex. E; D.E. 69-3 at 22. The parties agree that no change of ownership form was resubmitted to TransAmerica following the January 29, 2014 letter. Mancini and Vincent Jr., however, contend that they believed that the change of ownership had been effective because neither received TransAmerica's January 29, 2014 letter.

Vincent Jr. further claims that LifeServ did send a change of beneficiary form to TransAmerica in August 2014. Vincent Jr. SOMF at ¶¶ 55, 56, Ex. T. Mancini, on the other hand, indicates that he did not take any further action after the January 23, 2014 fax to TransAmerica because he was not aware that TransAmerica had raised any additional issues. D.E. 69-3 at ¶¶ 16, 20. The change of beneficiary form changed the beneficiary of the Policy to the ILIT. Vincent Jr. SOMF Ex. T. It appears that TransAmerica never responded as to the change of beneficiary form; at a minimum, no party has indicated that TransAmerica ever responded. The parties agree that neither the owner nor the beneficiaries were ever changed on the Policy.

Vincent Sr. died on January 24, 2015. Vincent Jr. SOMF at ¶ 1. On January 26, 2019, Mancini submitted the Policy's death claim package. *Id.* at ¶¶ 50-51. By letter dated February 6, 2015, Transamerica forwarded to Vincent Jr. a check for $501,077.50 indicating that it was his payment under the Policy. *Id.* at ¶ 52, Ex. R. The amount represented $500,000 from the Policy and a $1,077.50 premium refund.

On April 29, 2015, TransAmerica filed this interpleader action regarding the proceeds of Vincent Sr.'s $1,000,000 insurance policy. D.E. 1. Vincent Jr. submits that he is entitled to 100% of the proceeds (through the ILIT), while Peter asserts that he is due 50%. Vincent Jr. was named individually and in his roles as trustee for the ILIT. Vincent Jr. filed an answer, a crossclaim against Peter, and a counterclaim against TransAmerica. D.E. 5. TransAmerica filed an answer to Vincent Jr.'s counterclaim. D.E. 6. Peter then filed a counterclaim against TransAmerica and

a crossclaim against Vincent Jr, D.E. 12., and also filed an answer to the complaint, D.E. 13. TransAmerica then answered Peter's counterclaim. D.E. 14. On August 7, 2017, Vincent Jr. filed a third-party complaint against Mancini, D.E. 54, which Mancini answered. D.E. 59.

On April 27, 2018, Vincent Jr. filed a motion for summary judgment, D.E. 68, Mancini filed a motion for summary judgment on the third-party claim, D.E. 69, and Peter filed a motion for summary judgment, D.E. 70. Oppositions and replies followed. D.E. 72, 73, 74, 75, 76.

I. **Standard of Review**[9]

A. **Summary Judgment Standard**

Summary Judgment is proper where the moving party "shows that there is no genuine dispute as to any material fact," and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Abraham v. Raso*, 183 F.3d 279, 287 (3d Cir. 1999). A fact in dispute is material when it "might affect the outcome of the suit under the governing law" and is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputes over irrelevant or unnecessary facts will not preclude granting a motion for summary judgment. *Id.* "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the nonmoving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255)). A court's role in deciding a motion for summary judgment is not to evaluate the evidence and decide the truth of the matter but rather "to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

A party moving for summary judgment has the initial burden of showing the basis for its

---

[9] The parties agree that New Jersey substantive law applies.

7

motion and must demonstrate that there is an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). After the moving party adequately supports its motion, the burden shifts to the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (internal quotation marks omitted). To withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict the moving party. *Anderson*, 477 U.S. at 250. "[I]f the non-movant's evidence is merely 'colorable' or is 'not significantly probative,' the court may grant summary judgment." *Messa v. Omaha Prop. & Cas. Ins. Co.*, 122 F. Supp. 2d 523, 528 (D.N.J. 2000) (quoting *Anderson*, 477 U.S. at 249-50)).

Ultimately, there is "no genuine issue as to any material fact" if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp.*, 477 U.S. at 322. "If reasonable minds could differ as to the import of the evidence," however, summary judgment is not appropriate. *See Anderson*, 477 U.S. at 250-51.

## II. Analysis

All parties appear to agree that the Policy was never effectively changed to name the ILIT as the owner and beneficiary. Vincent Jr. Br. at 8; Peter Br. at 8. Peter argues that, as a result, he is entitled to summary judgment. Vincent Jr., while acknowledging that the changes were not made to the Policy, asserts that he prevails under the doctrine of probable intent. Mancini agrees that Vincent Jr. should win pursuant to the doctrine but argues, alternately, that he did not breach any duty to Vincent Jr. because he (Mancini) was never informed that TransAmerica had not accepted the January 2014 changes. Peter asserts that the doctrine of probable intent does not apply to life insurance policies but does not appear to contest that Vincent Sr. intended to disinherit

him.

As the party seeking to have the Court change the beneficiaries on the Policy, Vincent Jr. bears the burden of proof. *Czoch v. Freeman*, 317 N.J. Super. 273, 284-85 (App. Div. 1999) (citation omitted). As will be discussed, the parties present an issue on which New Jersey law is not entirely clear; that is, the intersection of the law of wills and the law of life insurance. Ultimately, however, the Court finds for Peter and against both Vincent Jr. and Mancini. The reason is because the critical document, the verification of trust agreement faxed on January 23, 2014 to TransAmerica, would not have changed the beneficiaries to the Policy; it would have only changed the owner of the Policy. Changing the beneficiaries (not the owners), from Vincent Jr. and Peter to the ILIT, was the critical action at issue.

As to life insurance, in New Jersey, the designated beneficiary of a life insurance policy has a vested property right in the proceeds of a policy which can be divested only by a change to the beneficiary in accord with the manner and mode required under the policy. *DeCeglia v. Estate of Colletti*, 265 N.J. Super. 128, 134 (App. Div. 1993) (citations omitted); *see also Fox v. Lincoln Fin. Grp.*, 439 N.J. Super. 380, 386-87 (App. Div. 2015); *Czoch*, 317 N.J. Super. at 284-85. "The traditional rule regarding change of beneficiary designations under a life insurance policy is that…the interest of the designated beneficiary…can be divested only by a change of beneficiary in the mode and manner prescribed by the [policy]." *DeCeglia v. Estate of Colletti*, 265 N.J. Super. at 133 (internal quotation marks and citations omitted). "Unless the change of beneficiary is executed in the manner prescribed by the policy, evidence that the insured intended to change the beneficiary will not effect the change." *Czoch*, 317 N.J. Super. at 285 (citation omitted). Moreover, "a mere verbal expression of an intent to change a beneficiary designation is ineffective." *DeCeglia*, 265 N.J. Super. at 136. Instead, "[t]he general rule of law is that the

beneficiary of a life insurance policy can only be changed by a writing, and in the manner prescribed by the policy." *Matter of Santos*, 283 N.J. Super. 26, 29 (Ch. Div. 1994), aff'd, 282 N.J. Super. 509 (App. Div. 1995) (citing *DeCeglia*, 265 N.J. Super at 128).

New Jersey recognizes two exceptions to this traditional rule. The first is substantial compliance, meaning that a beneficiary change is effective if it substantially complies with the method required in the policy. *Haynes v. Metro. Life Ins. Co.*, 166 N.J. Super. 308, 313 (App. Div. 1979). Substantial compliance requires that every reasonable effort be made to change the beneficiary. *Id.* For example, in *Haynes*, the court found substantial compliance because the insured made a written request to change the beneficiary from his estranged wife to another party, but the insured did not have the necessary life insurance policies because his estranged wife refused to relinquish them. *Id.*

The second exception was recognized by the New Jersey Supreme Court in *Vasconi v. Guardian Life Ins. Co.*, 124 N.J. 338 (1991). There, the court ruled as follows:

> [W]hen spouses divorce and enter into a property-settlement agreement that purports to settle "all questions pertaining to their respective interests in distribution of the marital assets," the proceeds of a life-insurance policy subject to the lifetime control of one spouse should ordinarily be considered as encompassed within the terms of the settlement agreement. Such a settlement agreement and waiver of interest in the property of the deceased spouse should be regarded as presumptively revoking the nonprobate transfer of the insurance proceeds.

124 N.J. at 346. Thus, the *Vasconi* exception rises in divorce proceedings and requires a written property settlement that covers all of the divorcing parties' interests in the marital assets. *Vasconi* also creates a rebuttable presumption rather than an absolute rule.

New Jersey courts have not extended *Vasconi*. In *Fox*, 439 N.J. Super. at 383, the insured changed the beneficiary of his life insurance policy from his ex-wife to his sister. The insured then

remarried, and according to his new wife, verbally informed her that she was the beneficiary. *Id.* at 384. The insured, however, died in an accident before actually changing the beneficiary with the insurance company. *Id.* The court in *Fox* noted that *Vasconi* recognized a "limited exception" to the traditional rule and found that the insured's alleged oral representation did not effectively change the beneficiary to his new spouse. *Id.* at 388-90.

Turning to wills, New Jersey recognizes the doctrine of probable intent when construing such documents.[10] *See Fid. Union Tr. Co. v. Robert*, 36 N.J. 561, 564-65 (1962). The New Jersey

---

[10] Vincent Jr. also points to N.J. Stat. Ann. § 3B:3-33.1, which provides as follows:

> a. The intention of a testator as expressed in his will controls the legal effect of his dispositions, and the rules of construction expressed in N.J.S.3B:3-34 through N.J.S.3B:3-48 shall apply unless the probable intention of the testator, as indicated by the will and relevant circumstances, is contrary.
>
> b. The intention of a settlor as expressed in a trust, or of an individual as expressed in a governing instrument, controls the legal effect of the dispositions therein and the rules of construction expressed in N.J.S. 3B:34 through N.J.S.3B:3-48 shall apply unless the probable intent of such settlor or of such individual, as indicated by the trust or by such governing instrument and relevant circumstances, is contrary. For purposes of this Title, when construing each of these rules of construction the word "testator" shall include but not be limited to a settlor or a creator of any other governing instrument; the word "will" shall include a trust or other governing instrument; the word "devise" shall include any disposition in a trust or other governing instrument; and the word "devisee" shall include a beneficiary of a trust or other governing instrument.

N.J. Stat. Ann. § 3B:3-33.1. While the statute certainly refers to "probable intention" and "probable intent," it is not clear to the Court that this provision governs the doctrine of probable intent as argued here. Instead, it appears that the statute means that certain statutory construction provisions, N.J.S.A. 3B:3-34 through N.J.S.A. 3B:3-48, apply unless a testator or settlor's probable intent shows the contrary. In fact, although the statute was enacted in 2004, effective February 2005, few New Jersey courts have actually cited to it. However, the Court found one opinion, *In re Nelson*, 454 N.J. Super. 151, 159 (App. Div. 2018), in which the Appellate Division concluded without discussion that the Section 3B:33-3.1 codified the doctrine of probable intent.

11

Supreme Court announced in 1962 that "the judicial function in construing [a] will was to ascertain and give effect to the probable intention of the testator." *Id.* at 564 (internal quotations and citations omitted). "[I]n ascertaining the subjective intent of the testator, courts will give primary emphasis to his dominant plan and purpose as they appear from the entirety of his will when read and considered in the light of the surrounding facts and circumstances. *Id.* at 564-65 (1962). Extrinsic evidence should not "be used to vary the terms of the will, but rather that it should be admitted first to show if there is an ambiguity and second, if one exists, to shed light on the testator's actual intent." *Engle v. Siegel*, 74 N.J. 287, 294 (1977) (citing *Wilson v. Flowers*, 58 N.J. 250, 263 (1971)). In addition, a testator's own expressions of his or her intent are highly relevant. *Wilson*, 58 N.J. at 260. "[T]he essential endeavor the court must undertake 'is to put itself in the testator's position insofar as possible in the effort to accomplish what he would have done had he envisioned the present inquiry.'" *In re Estate of Tateo*, 338 N.J. Super. 121, 127 (App. Div. 2001) (quoting *Fidelity*, 36 N.J. at 565-66) (internal quotation marks omitted). "[C]ourts should 'strain towards effectuating the probable intent of the testator[.]'" *Id.* (quoting *Fidelity*, 36 N.J. at 566).

Often, New Jersey courts invoke the doctrine of probable intent to address circumstances that arose after a person executed a will. For example, in *In re Estate of Branigan*, 129 N.J. 324, 326-31 (1992), executors attempted to reform a will in order to take advantage of tax law changes that occurred after the testator executed a will and then passed away. Relying on the doctrine of probable intent, the New Jersey Supreme Court reformed the will to take advantage of the new tax laws because the testator's intent showed a clear desire to achieve maximum estate tax savings. *Id.* at 334-36. Similarly, in *Engle*, a husband and wife had separate wills which provided that in the event of a common disaster, their estate would be divided equally between their mothers. 74

N.J. at 289. The husband's mother predeceased him, but he did not change his will to name another beneficiary before he also passed. *Id.* The New Jersey Supreme Court reformed the husband's will so that half of the estate passed to his side of the family because the intent of the husband and wife was to divide their property between their families. *Id.* at 295-96.

Moreover, in at least one case, the New Jersey Supreme Court considered a testator's intent before modifying his will. In *In re Estate of Payne*, 186 N.J. 324, 327 (2006), Payne's will left his New Jersey property to his partner, who lived with Payne. The will, however, did not indicate that the outstanding mortgage on the New Jersey home should first be paid off. *Id.* at 327. In November 2001, Payne wrote to his attorney, indicating that he wanted his real estate to pass to his beneficiaries "free and clear" and that his life insurance proceeds should be sufficient to pay off any existing mortgages. *Id.* at 330. The letter further indicated that Payne did not want his beneficiaries to be forced to sell any property in order to pay off any outstanding debt. *Id.* Payne's attorney, however, did not make the changes to the revised will. Instead, while Payne was in the hospital, and a day before he slipped into a coma before passing away, the attorney brought Payne the revised will to execute, which Payne did. *Id.* at 331. Relying on the doctrine of probable intent, the New Jersey Supreme Court found the November 2011 letter to be "crucial." *Id.* at 336. The court in *Payne* found that the letter was a "clear and unambiguous expression of Payne's intentions that his [partner]" should receive the New Jersey property free of any existing mortgage and that Payne's life insurance proceeds should be used to retire the mortgage. *Id.*

Complicating the Court's analysis is dicta from certain New Jersey opinions. In *Vasconi*, the court observed that "[l]ife insurance rivals the will, then, as the principal modern means of transferring assets to the decedent's estate." *Vasconi*, 124 N.J. at 343. As a result, the court considered the law of wills in its analysis. *Id.* In addition, the Appellate Division has noted that

"in each case which allowed the insurance proceeds to be distributed to a person other than the named beneficiary, there was a writing to dispute the beneficiary designation. . . . there was either a written divorce agreement or a divorce judgment" which controlled the disposition of the insurance proceeds. *Czoch*, 317 N.J. Super. at 287. Yet, in applying New Jersey law and citing to *Czoch* as well as *Vasconi*, the Third Circuit has ruled that a decedent's letter indicating that he intended to change his life insurance beneficiary was not legally sufficient to change the beneficiary. *Metro. Life Ins. Co. v. Kubichek*, 83 Fed. App'x 425, 429 (3d Cir 2003). The Circuit found that the letter did not substantially comply with policy's requirements that proper forms had to be completed and submitted to effect the change. *Id.*

Here, the Policy in question was obtained in 2007, well before Vincent Sr.'s 2010 will and his 2013 estate planning, which resulted in a new will, the ILIT, and the Living Trust. The parties agree that applying the traditional rule of New Jersey law as to life insurance, Peter remained a beneficiary under the Policy. This is because the beneficiaries were not changed in accordance with TransAmerica's required methods. Vincent Jr. asserts that TransAmerica's failure to perform the "purely administrative task of changing the owner and the beneficiary of the Policy" is not dispositive. Vincent Jr. Br. at 8. This argument misses the mark in two respects. First, it was not TransAmerica's failure, but the failure of Vincent Jr., the ILIT, and/or Mancini to perform the necessary tasks that resulted in the Policy remaining unchanged. Second, New Jersey's traditional rule demands just that – compliance with a policy's requirements to effectuate a change of beneficiary.

Moreover, the *Vasconi* exception does not apply; this is not a situation involving a written property settlement in a divorce action. The Court also finds that the substantial compliance exception has not been met because Vincent Jr., the ILIT, and Mancini did not make every

14

reasonable effort to effect the change. As is discussed further concerning Vincent Jr.'s claim against Mancini, Vincent Jr. and Mancini rely heavily on the attempt to change ownership of the Policy in January 2014. Not only was the attempt ineffective, it would not have accomplished the critical task, that is changing the beneficiaries under the Policy. Whether the owner of the Policy was Vincent Sr. or the ILIT, the beneficiaries needed to be changed to divest Peter of his property interest.

Vincent Jr. argues that the Court should not follow New Jersey's law concerning life insurance but should instead apply New Jersey's law as to wills, specifically, the doctrine of probable intent. For his part, Peter does not appear to argue that Vincent Sr. did not intend to disinherit Peter (or his sisters); instead, he claims that the doctrine does not apply. The Court declines to apply the doctrine. This is not a situation in which the doctrine is traditionally applied, that is, Vincent Sr. did not execute his will and related documents and then circumstances changed beyond what was contemplated in the estate documents. Instead, the Policy was in existence for years before the 2010 will and the 2013 estate planning. Of note, no apparent effort was made to change the Policy when the 2010 will was executed. Life insurance cannot be changed simply through a will. As then Judge Pashman noted in *Strohsahl v. Equitable Life Assur. Soc. of U.S.*, 71 N.J. Super. 300, 304 (Ch. Div. 1962), "[t]he overwhelming majority rule concerning a change of beneficiaries by will is, that the change of a beneficiary must be made in the manner set forth in the insurance policy and, absent a provision in the insurance contract, any attempt to make such a change by will is ineffectual." The court in *Strohsahl* held that the insured's attempt to change beneficiaries via a provision in his will was ineffective despite evidence of his intentions to make the change. *Id.* Taken to their logical extreme, Vincent Jr. and Mancini's arguments as to probable intent would apparently result in the Policy having effectively been changed at the time Vincent

Sr. executed the 2013 estate planning documents (or, perhaps, the 2010 will). Yet, Vincent Jr. and Mancini's later actions undercut this argument. Both seemed to appreciate that after the 2013 estate planning documents were executed, the Policy's beneficiaries still needed to be changed in accordance with TransAmerica's requirements. Vincent Jr. and Mancini attempted to do just that as to the ownership of the Policy in January 2014.

Moreover, the current case does not represent a scenario discussed in *Payne*, in which the attorney ignored the written instructions of the testator and then had the testator execute his will while literally on his death bed. Instead, Vincent Sr. had the services of an experienced elder law attorney when he executed the relevant estate planning documents in 2013.[11] In addition, Vincent Sr. had the services of a licensed broker, Mancini, who readily admits that his role was to aid in changing the beneficiary under the Policy. The Court acknowledges that dicta in certain New Jersey opinions support Vincent Jr.'s argument. However, because no New Jersey court has applied the doctrine of probable intent to the current scenario, the Court exercises restraint rather than expanding New Jersey law into new areas where the New Jersey courts have not ventured.

For the foregoing reasons, the Court finds that there are no genuine issues of material fact and Peter is entitled to summary judgment, while Vincent Jr.'s motion is denied.[12]

At the same time, the Court denies Mancini's motion for summary judgment on the third-party action filed by Vincent Jr. Mancini argues that he did not breach "any type of duty." Mancini Br. at 6. Mancini does not cite any legal authority in support of his argument but instead relies on

---

[11] The ILIT does not appear to mention the Policy although it is approximately sixty-four pages long and consists of approximately 100 separate sections.

[12] Because the Court is finding in favor of Peter, Vincent Jr.'s *Daubert* motion as to Peter's expert, Richard G. Pfluger, is moot.

factual arguments. *Id.* at 6-8. Mancini first argues that while he was well aware that Vincent Sr. wanted to change the ownership of the Policy, he (Mancini) was never given clear instructions in this regard and he believed that Garland[13] needed to take additional steps first. *Id.* at 6-7. Mancini adds that in any event, he fulfilled this duty when he caused the change of ownership forms to be faxed to TransAmerica in January 2014. *Id.* at 7. Mancini continues that he is not legally responsible for failing to act after TransAmerica's rejection of the ownership forms because he never actually received the January 29, 2014 letter from TransAmerica. *Id.* at 7-8.[14]

"The fiduciary relationship gives rise to a duty owed by the broker to the client 'to exercise good faith and reasonable skill in advising insureds.'" *Triarsi v. BSC Grp. Servs., LLC*, 422 N.J. Super. 104, 115 (App. Div. 2011) (quoting *Weinisch v. Sawyer*, 123 N.J. 333, 340 (1991)). "An insurance agent may assume duties in addition to those normally associated with the agent-insured relationship, and New Jersey courts regularly review the record for evidence of greater responsibilities." *Glezerman v. Columbian Mut. Life Ins. Co.*, 944 F.2d 146, 150-51 (3d Cir. 1991).

The following facts are not in dispute. Mancini freely admits that he agreed to become the servicing agent for the Policy so that he could help with changing the beneficiary. Mancini SOMF at ¶ 7. The beneficiaries on the Policy were not changed. Mancini places great emphasis on the change of ownership forms sent to TransAmerica in January 2014. He also notes that while he was purportedly copied on TransAmerica's January 29, 2014 rejection letter, TransAmerica has

---

[13] Neither Vincent Jr. nor Mancini made a claim against Garland in this matter.

[14] Mancini also notes that he performed the services in this matter free of charge. Mancini Br. at 6. Yet, Mancini provides no authority indicating that he is not liable for breach of duty if he acted without payment. Mancini does seem to make a potentially viable argument as to breach of contract, that is, no valid contract existed because consideration was lacking. *Id.* However, given that Mancini is the moving party and therefore carries the burden, and given his complete lack of legal citations or analysis, the Court declines to grant summary judgment as to the breach of contract claim.

confirmed that it did not in fact copy him. On this point, the Court can certainly envision Mancini's duty requiring him to do more than merely fax the documents to TransAmerica. For example, it would seem that a reasonable broker would have performed some type of follow-up to ensure that the change of ownership had actually been effected. However, Vincent Jr. does not provide competent evidence addressing this point.

Nevertheless, the Court denies Mancini's motion for a separate reason. The change of ownership forms would not have changed the beneficiaries on the Policy, and Mancini states that he was involved to change the beneficiary. Thus, whether Mancini breached his duty as to the change of ownership of the Policy does not answer the critical question – did he breach his duty as to the change of beneficiary? On this point, Mancini is silent. On the other hand, Vincent Jr. asserts that Mancini's office sent change of beneficiary forms to TransAmerica in August 2014. Mancini does not echo this sentiment. And no party presented evidence that TransAmerica responded to the August 2014 forms in any way. As a result, the Court finds that there is a genuine issue of material fact as to whether Mancini fulfilled his duty to aid the ILIT in changing the beneficiaries on the Policy from Vincent Jr. and Peter to the ILIT.

For the foregoing reasons, Mancini's motion is denied.

### III. Conclusion

For the foregoing reasons, Vincent Jr.'s motion for summary judgment is **DENIED** and his *Daubert* motion is **DENIED as moot**, Mancini's motion for summary judgment as to the third-party claim is **DENIED**, and Peter's motion for summary judgment is **GRANTED**. An appropriate Order accompanies this Opinion.

Dated: July 19, 2019

John Michael Vazquez, U.S.D.J.